Approved: _____
THANE REHN/CECILIA VOGEL
Assistant United States Attorneys

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - X

**21 MAG 4043**

UNITED STATES OF AMERICA

    - v. -

GULNOZA RAKHMANOVA,

                        Defendant.

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 371 and
1956

COUNTY OF OFFENSE:
NEW YORK

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ALI AMHAZ-STRICKLAND, being duly sworn, deposes and says that he is a Special Agent with Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

(Conspiracy to Operate an Unlicensed
Money Transmitting Business)

1.    From at least in or about January 2021, up to and including the present, in the Southern District of New York and elsewhere, GULNOZA RAKHMANOVA, the defendant, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to operate an unlicensed money transmitting business, in violation of Title 18, United States Code, Section 1960.

2.    It was a part and object of the conspiracy that GULNOZA RAKHMANOVA, the defendant, and others known and unknown, knowingly would and did conduct, control, manage, supervise, direct, and own all and part of an unlicensed money transmitting

business affecting interstate and foreign commerce, which (a) was operated without an appropriate money transmitting license in a State where such operation was punishable as a misdemeanor and a felony under State law, and (b) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and regulations prescribed under such section, to wit, RAKHMANOVA used a company owned and controlled by a co-conspirator in New York, New York, to transmit money from, through, and out of the United States, including money transmitted through the Southern District of New York, without an appropriate state license, which conduct was punishable as a misdemeanor under New York law, and without meeting the Federal registration requirements set forth for money transmitting businesses.

Overt Acts

3.   In furtherance of said conspiracy and to affect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York:

    a.   On or about February 4, 2021, GULNOZA RAKHMANOVA sent a Telegram message to a confidential source ("CS-1") with instructions to transmit funds to a bank account in New York, NY (the "Company-1 Bank Account), and per those instructions, on or about February 4, 2021, $51,319 were transmitted from an FBI covert account to the Company-1 Bank Account.

    b.   On or about February 18, 2021, GULNOZA RAKHMANOVA sent a Telegram message to CS-1 attaching an invoice for $40,200 with instructions to transmit funds to the Company-1 Bank Account, and per those instructions, on or about February 19, 2021, $40,200 were transmitted from an FBI covert account to the Company-1 Bank Account.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Money Laundering)

4.   In or about February and March 2021, in the Southern District of New York and elsewhere, GULNOZA RAKHMANOVA, the defendant, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, knowingly did conduct and attempt to conduct a financial transaction involving

property represented to be the proceeds of specified unlawful activity, to wit: fraud in connection with loan and credit applications, in violation of Title 18, United States Code, Section 1014.

(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Special Agent with FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with witnesses and other law enforcement agents, and my review of bank records and websites. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Overview

6. From my participation in this investigation, I have learned that GULNOZA RAKHMANOVA, the defendant, operates an unlicensed money transmitting business for the purpose of moving funds primarily from within the United States to companies and/or individuals located outside of the United States, primarily Uzbekistan. RAKHMANOVA operates the unlicensed money transmitting business through various companies operating in and around the New York City area that are controlled by RAKHMANOVA's co-conspirators.

7. Between in or about January and March 2021, GULNOZA RAKHMANOVA executed a series of financial transactions on behalf of a confidential source ("CS-1")[1] acting at the direction of the FBI. CS-1 requested RAKHMANOVA's assistance to transfer funds to Uzbekistan, and CS-1 paid RAKHMANOVA a fee to execute the transactions. In each of the transactions, RAKHMANOVA directed

---

[1] The FBI has discussed with CS-1 the possibility of future financial compensation in connection with assisting law enforcement, but the FBI has not discussed specific compensation and has explicitly informed CS-1 that there is no guarantee of compensation. To date, information received from CS-1 has proved reliable and has at times been corroborated by independent sources of evidence.

3

CS-1 to transfer the funds to a company ("Company-1") that held a bank account in Manhattan, New York ("Company-1 Bank Account"), and RAKHMANOVA made the equivalent amount of U.S. Currency, minus a fee, available for collection in Uzbekistan. RAKHMANOVA provided CS-1 with fake invoices in connection with the transactions.  During the course of these transactions, CS-1 represented to RAKHMANOVA, in substance and in part, that the funds were loans obtained fraudulently from the Small Business Administration in connection with corona virus pandemic relief. RAKHMANOVA transferred a total of approximately $131,519.25 on behalf of CS-1.

Transaction-1

8.   Based on information provided by CS-1, including written phone communications and recorded voice messages between CS-1 and GULNOZA RAKHMANOVA,[2] bank records, and emails, I have learned the following, in substance and in part:

   a.   Prior to CS-1's cooperation with law enforcement, CS-1 had previously transferred funds from the United States to Uzbekistan using the money transmitting services of GULNOZA RAKHMANOVA.

   b.   In or about late January 2021, at the direction of law enforcement, CS-1 contacted GULNOZA RAKHMANOVA via the message application Telegram to transfer funds from New York to Uzbekistan. RAKHMANOVA informed CS-1, in substance, that $10,000 was the minimum transfer amount she accepted.

   c.   CS-1 initially provided RAKHMANOVA with information regarding the company through which CS-1 would send the funds, including the company name, address, email address, tax identification number, and owner's name.  RAKHMANOVA informed CS-1, in substance and in part, that CS-1 could not transfer funds from CS-1's company because RAKHMANOVA was using a logistics company to transfer the funds while CS-1's company was a textile company.  Accordingly, CS-1 provided RAKHMANOVA with information regarding a purported transportation company

---

[2] Throughout the investigation, communications between CS-1 and RAKHMANOVA were in Uzbek.  Communications, including written phone communications, recorded voice messages, and recorded calls have been translated into English by an FBI translator, and I have reviewed the draft English translations.

("Company-2"), including an email address ("Company-2 Email Address").[3]

   d. On or about February 4, 2021, RAKHMANOVA, via Telegram, sent CS-1 a "Logistics and Dispatch Support Agreement," written in English, between Company-1 and Company-2. The agreement stated that payments should be made to the Company-1 Bank Account, and provided a bank account number, routing number, and New York, NY address for the Company-1 Bank Account.

   e. On or about February 4, 2021, the FBI wired from an FBI covert bank account held in the name of Company-2 approximately $51,319 to the Company-1 Bank Account in Manhattan.

   f. On or about February 5, 2021, the Company-2 Email Address received an email from an email address for Company-1 (the "Company-1 Email Address"). RAKHMANOVA's co-conspirator ("CC-1") was copied on the email. The email attached an invoice in the total amount of $51,289 from Company-1 addressed to Company-2. The invoice reflected that Company-1 had provided the following services to Company-2 in January 2021: "Dispatcher Support" in the amount of $25,289 and "Data Analysis" in the amount of $26,000. Company-1 did not provide Company-2 with any such services. The invoice listed an address in New York, NY for Company-1 and provided the account number and address for the Company-1 Bank Account.

   g. On or about February 5, 2021, RAKHMANOVA, in substance, requested via Telegram that CS-1 send RAKHMANOVA a copy of the confirmation of the wire from Company-2 to Company-1. RAKHMANOVA informed CS-1, in substance, that RAKHMANOVA could not provide the money to CS-1 in Uzbekistan without the wire confirmation. On or about February 6, 2021, CS-1 sent the wire confirmation to RAKHMANOVA.

   h. On or about February 6, 2021, via Telegram, RAKHMANOVA asked CS-1, in substance, who would receive the money in Uzbekistan. At the direction of law enforcement, CS-1 provided RAKHAMONVA with the name and telephone number of a

---

[3] Company-2 is an entity controlled by the FBI and is used for investigative purposes.

5

confidential source ("CS-2")[4] in Uzbekistan who would collect the U.S. currency in Uzbekistan.

        i. On or about February 6, 2021, when CS-1 inquired about conducting another transaction, RAKHMANOVA explained to CS-1, in substance and in part, that CS-1 needed to inform RAKHMANOVA of the amount of money to be transferred in advance. RAKHMANOVA would then provide CS-1 with an invoice that matched the amount of money to be transferred; the amount of money transferred by CS-1 was required to match the dollar amount listed on the invoice.

        j. On or about February 8, 2021, RAKHMANOVA, via Telegram, sent CS-1 the name and phone number of an individual in Uzbekistan ("CC-2") who would facilitate the delivery of the funds in Uzbekistan.

        k. On or about February 11, 2021, CS-1 confirmed for RAKHMANOVA, in substance, that CS-2 had received approximately $50,036 in U.S. Currency in Uzbekistan. CS-1 and RAKHMANOVA discussed, in substance and in part, that 2.5% was the agreed upon fee for the money remitting service, and thus approximately $1,282 was deducted from the transfer amount.

        l. On or about February 19, 2021, the Company-2 Email Address received an email from the Company-1 Email Address that attached a corrected invoice to reflect that $51,319 was transferred from Company-2 to Company-1 instead of $51,289.

### Transaction-2

9. Based on information provided by CS-1, including written phone communications and recorded voice messages between CS-1 and GULNOZA RAKHMANOVA, as well as recorded calls between CS-1 and RAKHMANOVA,[5] bank records, and emails, I have learned the following, in substance and in part:

        a. In or about mid-February 2021, CS-1 inquired with RAKHMANOVA regarding sending additional funds to Uzbekistan.

---

[4] CS-2 is the brother of CS-1. To date, information received from CS-2 has proved reliable and has at times been corroborated by independent sources of evidence.

[5] I have reviewed draft English translations of these communications.

b. On or about February 18, 2021, CS-1 and RAKHMANOVA spoke on several recorded calls. Over the course of those calls, CS-1 and RAKHMANOVA made the following statements, in substance and in part:

i. CS-1 informed RAKHMANOVA that a friend had $120,000 that the friend had received as a Small Business Administration ("SBA") loan and that CS-1 wanted to transfer the money to Uzbekistan. CS-1 described the funds as "dirty money."

ii. RAKHMANOVA responded that she was familiar with this type of loan and that the loan funds must remain in the United States.

iii. CS-1 informed RAKHMANOVA that the company that received the SBA loan was a purported transportation company, but that the company was not a legal company and had only been opened for the purpose of transferring money. CS-1 explained that the purported transportation company did not engage in any "trucking business" and did not have an "MCA" number, also known based on my training and experience as a "motor carrier number."

iv. RAKHMANOVA responded that CS-1's friend cannot open a company for the sole purpose of transferring loan funds received from the government, and RAKHMANOVA advised that CS-1 and his friend should not be involved in this type of "illegal activity." RAKHMANOVA further explained that the government will force CS-1 and his friend to repay the loan, but that the government cannot take the money back from RAKHMANOVA or her companies. RAKHMANOVA stated that her company would only be receiving the loan funds from CS-1's friend and thus would not be responsible for any wrongdoing in connection with the SBA loan, and the government would not take the loan funds from RAKHMANOVA's company's account.

v. CS-1 responded that CS-1's friend opened the purported transportation company two years ago and has not had problems with the company before.

vi. RAKHMANOVA agreed to transfer the SBA loan funds to Uzbekistan in the amount of $40,200.

c. On or about February 18, 2021, RAKHMANOVA sent CS-1 an invoice via Telegram on behalf of Company-1 addressed to Company-2 for "Dispatcher Support" and "On Call Support" in February 2021 for a total amount of $40,200. The invoice included account information for the Company-1 Bank Account.

7

Company-1 provided no such services to Company-2. That same day, the Company-2 Email Address received an email from the Company-1 Email Address attaching the same invoice.

        d. On or about February 19, 2021, the FBI wired approximately $40,200 from an FBI covert bank account for Company-2 to the Company-1 Bank Account in Manhattan, which had been provided by RAKHMANOVA to CS-1 to conduct the transaction.

        e. Later on or about February 19, 2021, RAKHMANOVA sent CS-1 a voice message via Telegram, asking if the $40,200 transferred that day was "clean money" and if there was any problem with the money. CS-1 responded, in substance, that the money was not "clean" and RAKHMANOVA responded "Ok" via Telegram.

        f. On or about February 22, 2021, during a recorded call, RAKHMANOVA confirmed, in substance and in part, that she would transfer the SBA loan funds at the same fee rate as the prior transaction. RAKHMANOVA informed CS-1, in substance and in part, that "this type of loan has been transferred before" in amounts ranging from $70,000 - $80,000. RAKHMANOVA explained, in substance and in part, that the government "started giving the loans in the summer," and she "started sending the money since then" and that "there were no problems" with the transfers. RAKHMANOVA reminded CS-1, in substance and in part, that CS-1 is responsible for any debt owed to the government.

        g. On or about February 24, 2021, RAKHMANOVA, via Telegram, instructed CS-1, in substance, to contact CC-2 in Uzbekistan to coordinate the collection of funds in Uzbekistan.

        h. On or about February 25, 2021, CS-2 in Uzbekistan received $39,195 in U.S. Currency from a courier, which represented the funds transferred from Company-2 to Company-1, minus the agreed upon 2.5% transmittal fee. The meeting between CS-2 and the courier was video recorded and photographed. CS-2 had communicated by phone with CC-2 to coordinate the cash delivery. That same day, RAKHMANOVA informed CS-1 via Telegram that CS-1's money had been delivered in Uzbekistan.

Transaction-3

10. Based on information provided by CS-1, a recorded call between CS-1 and RAKHMANOVA,[6] bank records, and emails, I have learned the following, in substance and in part:

    a. In or about mid-March, 2021, GULNOZA RAKHMANOVA agreed to transmit $40,000 for CS-1 from New York to Uzbekistan. During a recorded call on or about March 18, 2021, CS-1 reiterated to RAKHMANOVA, in substance and in part, that the $40,000 were SBA loan funds, and CS-1 referred to the funds as "dirty money," which CS-1 defined as "stolen money." RAKHMANOVA responded, in substance and in part, that the funds were not "stolen money" because they are a loan given by the government. RAKHMANOVA confirmed that the funds would be transferred to Uzbekistan in at most five days. During the course of the call, RAKHMANOVA also reassured CS-1, in substance and in part, that there would be no "suspicions" or "problems" in connection with the transfer.

    b. On or about March 19, 2021, the FBI wired approximately $40,000 from an FBI covert bank account for Company-2 to the Company-1 Bank Account in Manhattan, which had been provided by RAKHMANOVA to CS-1 to conduct the transaction.

    c. On or about March 20, 2021, the Company-2 Email Address received an email from the Company-1 Email Address attaching an invoice from Company-1 to Company-2 for "Dispatcher Support" in the amount of $40,000 for March 2021. Company-1 provided no such services to Company-2.

    d. On or about March 27, 2021, CS-2 collected approximately $39,000 in U.S. Currency in Uzbekistan, which represented the funds transferred from Company-2 to Company-1, minus the agreed upon 2.5% transmittal fee. This transaction was audio and video recorded.

11. Based on my review of law enforcement databases, I have learned that neither Company-1 nor GULNOZA RAKHMANOVA are licensed to operate a money transmitting business.

---

[6] I have reviewed a draft English translation of the recorded call.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of GULNOZA RAKHMANOVA, the defendant, and that she be imprisoned or bailed, as the case may be.

_____S/ Ali Amhaz-Strickland /otw_____
Special Agent Ali Amhaz-Strickland
Federal Bureau of Investigation
ID confirmed by Cred. No.

Sworn to before me this — by telephone
__14th__ day of April, 2021

_____
THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK